RECORD NO. 12-1928

In The

# United States Court of Appeals
### For The Fourth Circuit

## UNIVERSAL FURNITURE INTERNATIONAL, INCORPORATED,

*Plaintiff – Appellee*,

**v.**

## PAUL FRANKEL,

*Defendant – Appellant*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO

———————

### BRIEF OF APPELLANT

———————

John F. Bloss
HIGGINS BENJAMIN, PLLC
101 West Friendly Avenue, Suite 500
Greensboro, North Carolina 27401
(336) 273-1600

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-1928__        Caption: __Universal Furniture International, Inc. v. Paul Frankel__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Paul Frankel_____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                         ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☑YES ☐NO
If yes, identify entity and nature of interest:

Upon information and belief, Plaintiff's parent corporation is Samson Holding Ltd., an entity which is publicly traded on the Hong Kong Stock Exchange.

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ John F. Bloss _____    Date: ____August 15, 2012____

Counsel for: Defendant/Appellant Paul Frankel _____

## CERTIFICATE OF SERVICE
**************************

I certify that on ____August 15, 2012____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ John F. Bloss _____    ____August 15, 2012____
(signature)                                              (date)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION.....................................................1

STATEMENT OF THE ISSUES........................................................2

STATEMENT OF THE CASE...........................................................3

    A.    The Collezione Litigation...................................................3

        1.    The Trial...............................................................4

        2.    The Court's Rulings ...........................................6

    B.    The Instant Litigation .........................................................7

STATEMENT OF FACTS ..................................................................8

    A.    The Parties........................................................................8

    B.    Events Surrounding the October 2004 High Point Market .................11

    C.    Defense of the Collezione Litigation .................................14

SUMMARY OF ARGUMENT ...........................................................14

ARGUMENT ....................................................................................16

    I.    STANDARD OF REVIEW ..............................................16

    II.    THE TRIAL COURT ERRED IN APPLYING OFFENSIVE COLLATERAL ESTOPPEL AGAINST DEFENDANT.................16

        A.    Plaintiff's Failure to Join Defendant as a Party in the Collezione Litigation When It Could Have Easily Done So Prevents Application of Offensive Collateral Estoppel.......17

B.    Material Issues of Fact Abound as to the Factors
Applicable to the Application of Offensive Collateral
Estoppel ................................................................................ 18

III.    THE TRIAL COURT ERRED IN GRANTING SUMMARY
JUDGMENT ON ISSUES PERSONAL TO DEFENDANT ............. 21

A.    Summary Judgment Against Defendant was
Inappropriate on the Claim for Violation of the Copyright
Act ....................................................................................... 22

B.    Material Issues of Fact, Precluding Summary Judgment,
Exist As to the Plaintiff's Claim Under the Lanham Act
and UDTPA ........................................................................... 27

CONCLUSION ................................................................................ 30

REQUEST FOR ARGUMENT .............................................................. 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brunswick Beacon, Inc. v. Schock-Hopchas Pub. Co.*,
   810 F.2d 410 (4th Cir. 1987) ........................................................26

*Burlington Indus. v. Ellerth*,
   524 U.S. 742 (1998)..................................................................8

*Charbonnages de France v. Smith*,
   597 F.2d 406 (4th Cir. 1979) ......................................................24

*CoStar Group, Inc. v. LoopNet, Inc.*,
   373 F.3d 544 (4th Cir. 2004) ......................................................25

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)..................................................................27

*Durham v. Horner*,
   690 F.3d 183 (4th Cir. 2012) ......................................................16

*Elmet Techs., Inc. v. Radko*,
   2008 U.S. Dist. LEXIS 117273 (W.D.N.C. May 13, 2008).........................30

*Henry A. Knott Co., Div. of Knott Industries, Inc. v.*
*Chesapeake & Potomac Tel. Co.*,
   772 F.2d 78 (4th Cir. 1985) .......................................................24

*Henry v. Purnell*,
   652 F.3d 524 (4th Cir. 2011) ......................................................16

*Kloth v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*,
   355 F.3d 322 (4th Cir. 2004) ..................................................18, 21

*Klugh v. United States*,
   818 F.2d 294 (4th Cir. 1987) ......................................................20

*Martin v. Am. Bancorporation Retirement Plan*,
    407 F.3d 643 (4th Cir. 2005) ...................................................19, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................8

*Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*,
    403 F.3d 188 (4th Cir. 2005) ...................................................24, 30

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
    284 F.3d 505 (4th Cir. 2002) .......................................................26

*O'Connor v. United States*,
    956 F.2d 48 (4th Cir. 1992) .........................................................26

*Oberlin Capital v. Slavin*,
    147 N.C. App. 52, 554 S.E.2d 840 (2001) ...................................30

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979).............................................................. 17-18

*Polk v. Montgomery County, Md.*,
    782 F.2d 1196 (4th Cir. 1986) ................................................17, 19

*Polo Fashions, Inc. v. Craftex, Inc.*,
    816 F.2d 145 (4th Cir. 1987) .......................................................29

*Rohrbough v. Wyeth Labs., Inc.*,
    916 F.2d 970 (4th Cir. 1990) .......................................................23

*Tillman v. Wheaton-Haven Recreation Ass'n*,
    517 F.2d 1141 (4th Cir. 1975) ................................................ 28-29

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    1:04cv00977 (M.D.N.C. Sept. 14, 2007) .......................................3

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) .........................................5, 6, 7, 28

*Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*,
    599 F. Supp. 2d 648 (M.D.N.C. 2009) .............................................4, 6, 7, 24

*Universal Furniture Int'l, Inc. v. Frankel*,
    835 F. Supp. 2d 35 (M.D.N.C. 2011) .......................................................*passim*

*Webster v. U.S. Dep't of Agriculture*,
    685 F.3d 411 (4th Cir. 2012) .......................................................................16

*Ziskie v. Mineta*,
    547 F.3d 220 (4th Cir. 2008) ........................................................................8

## **STATUTES**

15 U.S.C. § 1125(a)(1)(A) ...................................................................................27

15 U.S.C. §§ 1051-1141n .......................................................................................1

17 U.S.C. §§ 101-810 .............................................................................................1

17 U.S.C. § 106 ....................................................................................................22

17 U.S.C. § 106(3) ...............................................................................................22

17 U.S.C. § 501(a) ...............................................................................................22

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1338 ....................................................................................................1

28 U.S.C. § 1338(a) ...............................................................................................1

28 U.S.C. § 1367 ....................................................................................................1

N.C. Gen. Stat. § 75-1.1 .........................................................................................1

## **RULES**

Fed. R. Civ. P. 30(b)(6)..............................................................................4

Local Rule 34(a)....................................................................................30

## **OTHER AUTHORITIES**

Kimberly A. Richards, "Should Furniture Become Fashion Forward?
Applying Fashion's Copyright Proposals to the Furniture Industry,"
11 WAKE FOREST J. OF BUS. & INT. PROP. LAW 269 (2010-2011) ...........................9

RESTATEMENT (SECOND) OF JUDGMENTS § 88 (3)
(Tent. Draft No. 2, Apr. 15, 1975) ....................................................................18

## STATEMENT OF JURISDICTION

The Complaint alleges direct and contributory copyright infringement under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101-810; violations of the Trademark Act of 1946, 15 U.S.C. §§ 1051-1141n (the "Lanham Act"); unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 ("UDTPA"); and unfair competition under North Carolina common law.  (JA12).  The United States District Court for the Middle District of North Carolina had jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the federal Copyright Act and Lanham Act.  The district court had jurisdiction over the State law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

Defendant Leonard Frankel did not answer the Complaint, and liability was contested by Defendant Paul Frankel (hereinafter, "Defendant") only.  On December 29, 2011, the district court entered a Memorandum Opinion and Order, *inter alia*, granting Plaintiff's motion for summary judgment as to the issue of the personal liability of Defendant under the Copyright Act, the Lanham Act, and UDTPA.  *See Universal Furniture Int'l, Inc. v. Frankel*, 835 F. Supp. 2d 35 (M.D.N.C. 2011), reprinted at JA347-380.  The court announced in the Order that it would hold an evidentiary hearing on the issue of damages at a later date. 835 F. Supp. 2d at 51.  On May 21, 2012, the district court entered an Order approving

the parties' stipulation as to damages with respect to each remaining cause of action against Defendant. (JA384).

The court, on July 2, 2012, entered Judgment by Default against Leonard Frankel. (JA393). The July 2, 2012 Order was the final order in the case pursuant to 28 U.S.C. § 1291 in that it ended litigation of the case on the merits.

Defendant filed a timely notice of appeal upon entry of the final Judgment against Leonard Frankel. This Court has jurisdiction over the resulting appeal under 28 U.S.C. § 1291.

<u>**STATEMENT OF THE ISSUES**</u>

The issues presented by this appeal are the following:

1.      Was summary judgment properly entered against Defendant Paul Frankel when the district court precluded Defendant from litigating substantive issues relating to his personal liability in light of a prior judgment against a corporation of which Defendant was an officer, despite the facts that (a) Plaintiff could have easily joined Defendant as a party in the prior action, (b) material issues of fact existed as to whether Defendant and the corporation were in privity and whether Defendant had a full and fair opportunity to litigate pertinent issues in the prior action?

2.      Was summary judgment properly entered against Defendant when material issues of fact existed as to whether Defendant distributed, or supervised

persons who allegedly distributed, copies of products for which Plaintiff owned

valid copyrights?

3.      Was summary judgment properly entered against Defendant when

material issues of fact existed as to whether Defendant was culpable for the passing

off Plaintiff's furniture as products of the corporation of which Defendant was an

officer?

4.      Was summary judgment properly entered against Defendant when

material issues of fact existed as to whether Defendant was willfully blind to the

alleged infringements by the corporation of which Defendant was an officer?

<u>**STATEMENT OF THE CASE**</u>

Because the court below relied extensively on testimony and findings from a

prior, related action, *Universal Furniture Int'l, Inc. v. Collezione Europa USA,*

*Inc.*, 1:04cv00977 (M.D.N.C.) (the "Collezione Litigation"), in reaching its

determinations in this case, a description of the procedural history of both cases is

necessary for an understanding of the issues presented in this appeal.

**A.      <u>The Collezione Litigation.</u>**

In 2004, before filing the instant action, Plaintiff Universal Furniture

International, Inc., initiated the Collezione Litigation against Collezione Europa

USA, Inc. ("Collezione") in the Middle District of North Carolina, asserting claims

under the Copyright Act, the Lanham Act, and the UDTPA, *see* 835 F. Supp. 2d at

38—the identical claims at issue in this appeal.[1]  The Collezione Litigation

culminated in a bench trial from May 14-17, 2007, before The Honorable William

L. Osteen, Sr. ("Judge Osteen, Sr."). (*See* JA132 -288).

### 1. The Trial.

During the Plaintiff's presentation of its case in the Collezione Litigation, it

played the complete videotaped depositions of Defendants Paul Frankel

("Defendant") and Leonard Frankel, taken in the Collezione Litigation on May 15,

2006 and May 16, 2006, respectively. (JA147, 148).  Defendant appeared at his

deposition individually and as Collezione's Fed. R. Civ. P. 30(b)(6) witness for

certain financial matters regarding Collezione, including calculations of gross and

net profits, and discovery issues. (JA36-37; 181 lines 17-20; 195 lines 19-21; 605).

*See also Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, 599 F.

Supp. 2d 648, 654 (M.D.N.C. 2009) (hereinafter "*Collezione*").   Leonard Frankel

was deposed individually and as Collezione's Rule 30(b)(6) witness on topics

including the design sources for the Collezione furniture and Collezione's prior

copyright infringement claims.  (*E.g.*, JA524 lines 00219 14-18, JA543 lines 0262

21-25).

---

[1] *See* Plaintiff's Mot. for S.J. ¶ 8 (JA106) ("The only difference between the claims in this case and those in the Collezione Litigation is that here, [Plaintiff] seeks to hold Defendant Paul Frankel (as well as his defaulting co-defendant Leonard Frankel) personally liable for the same unlawful actions that were at issue in the Collezione Litigation").

Plaintiff also offered at trial the expert testimony of the well-known furniture designer, Thomas Moser. Mr. Moser testified, *inter alia*, that although the ornamental designs on Plaintiff's furniture originated in the public domain, the selection, coordination, and arrangement of these elements reflected its designer's creative judgment. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 431 (4th Cir. 2010).

Defendant testified during Collezione's presentation of its case; relevant portions of his testimony are discussed in the Statement of Facts below. It is notable that Judge Osteen, Sr., struck Defendant's reference to Collezione's redesign of the subject furniture, upon Plaintiff's objection that the Defendant lacked personal knowledge of the redesign (JA165-66), and for the same reason refused to let him testify as to why Collezione decided to redesign the furniture. (JA161). Likewise, on Plaintiff's objection, the court struck as hearsay Defendant's testimony as to Collezione's communications with its customers after the offending furniture was redesigned. (JA174-75). And the court did not allow Defendant to testify as to his view of the propriety of displaying another company's furniture, since Defendant was not personally a party in the Collezione Litigation. (JA282 lines 4-13).

2.     **The Court's Rulings.**

At the conclusion of the trial in the Collezione Litigation, the Judge Osteen, Sr. found that Collezione violated the Copyright Act by producing pieces of furniture displaying substantially similar types and arrangements of decorative elements as those used in Plaintiff's furniture. (JA327).  The trial court also found that Collezione displayed in its showroom at the High Point Market certain pieces of furniture that were actually from one of the two collections of Plaintiff's furniture at issue. (JA323).  Given this finding, the court determined that Collezione was liable to Plaintiff for false designation/ reverse passing off of Plaintiff's furniture in violation of the Lanham Act. (JA328).  Based on the court's determination that Collezione had violated the Lanham Act, the court found that Collezione had also violated the UDPTA. (JA326).

Collezione filed a bankruptcy petition in February 2008. *See Universal Furniture Int'l, Inc. v. Collezione Europa USA, supra*, 618 F.3d at 427. Plaintiff requested relief from the bankruptcy automatic stay to allow the district court to resolve the damages issue.  The bankruptcy court agreed and lifted the stay. *Id.*

Judge Osteen, Sr., retired from the Bench on September 14, 2007 and was succeeded by The Honorable William L. Osteen, Jr. ("Judge Osteen, Jr."). *See Collezione*, 599 F. Supp. 2d at 651-52.  Judge Osteen, Jr. conducted a damages hearing on June 4, 2008, after Collezione had filed for bankruptcy. *See id.* at 650.

After the hearing, Judge Osteen, Jr., issued an Order on damages, in which the court struck Collezione's evidence as to its costs and overhead, *Id.* at 660, and awarded Plaintiff damages in the amount of gross sales of the furniture at issue, $11,225,777.18. *Id.* at 661.

This Court, on August 20, 2010, affirmed the district court's ruling on liability and damages. *Universal Furn. Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417 (4th Cir. 2010).

## B.      The Instant Litigation.

On June 13, 2008, Plaintiff Universal Furniture International, Inc. filed its Complaint against Defendant and Leonard Frankel alleging direct and contributory copyright infringement under the Copyright Act; violations of the Lanham Act; for violations of the UDTPA; and for unfair competition under North Carolina common law.  (JA12).  Leonard Frankel did not answer the Complaint.

On December 29, 2011, the district court issued a Memorandum Opinion and Order, *inter alia*, granting Plaintiff's motion for summary judgment as to the issue of Defendant's personal liability under the Copyright Act, the Lanham Act, and UDTPA.  *See Universal Furniture Int'l, Inc. v. Frankel*, 835 F. Supp. 2d 35 (M.D.N.C. 2011), reprinted at JA347-380 (hereinafter, "*Frankel*").  The Order set forth that the court would hold an evidentiary hearing on the issue of damages at a later date. *Frankel*, 835 F. Supp. 2d at 51.

-7-

On May 21, 2012, the trial court entered an Order approving the parties'
stipulation as to damages with respect to each remaining cause of action against
Defendant. (JA384). Pursuant to this Order, the district court entered judgment
against Defendant on the Copyright Act claim in the amount of $1,874,885.00,
jointly and severally with any judgment to be entered in the case against Leonard
Frankel (JA384-85). The court entered judgment against Defendant on the
Lanham Act and UDTPA claims in the combined amount of $100.00. (JA384 ¶ 2),

The court, on July 2, 2012, entered Judgment by Default against Leonard
Frankel. (JA393).

On July 31, 2012, Defendant filed a timely notice of appeal. (JA395).

## STATEMENT OF FACTS[2]

### A.    The Parties.

After practicing as a psychologist in California, Defendant Paul Frankel
returned to the New York metropolitan area in 1978 to work for his father's
furniture business. (JA558 line 00008 12-23). In 1984 Defendant and his older
brother, Leonard Frankel, founded Collezione. Eventually, Collezione became
known in the furniture industry as a business that imitated or "knocked off" the

---

[2] On review of a summary judgment order, the appellate court must take the facts
alleged by the non-moving party as true. *See*, *e.g.*, *Burlington Indus. v. Ellerth*, 524
U.S. 742, 747 (1998). Moreover, the inferences to be drawn from the facts must be
viewed in the light most favorable to the party who opposed the motion. *E.g.*,
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);
*Ziskie v. Mineta*, 547 F.3d 220, 222 (4th Cir. 2008).

designs of other furniture companies in order to provide lower-cost alternatives to retail stores.[3] (JA289).  Leonard Frankel testified at deposition in the Collezione Litigation (before either he or Defendant had any inkling that they would be named as individual defendants in this follow-up litigation) that he, and he only, decided whether to knock off a particular line of furniture. (JA493).

Leonard Frankel was at all relevant times President and Chief Operating Officer of Collezione (JA112 ¶ 4; 433; 562).  Defendant was Vice President, Secretary, and Treasurer. (JA151 lines 15-16).  Collezione, during relevant times, employed approximately 100 people. (JA39 lines 17-18).  The shareholders in Collezione throughout its existence were Defendant; his brother, Leonard Frankel; and their father, Bernard Frankel. (JA123 ¶ 3).  Bernard Frankel owned approximately 1.7% of the stock of Collezione (JA43 lines 9-12; JA547 lines 00273 16-17).  Because Defendant and Leonard Frankel owned an equal number of the remaining shares of Collezione, Bernard and Leonard Frankel together had the power to control the corporation.  Indeed, Bernard Frankel's vote when the

---

[3] Collezione was hardly alone in this practice.  The furniture "knockoff" industry was ubiquitous during the time frames at issue.  *See*, *e.g.*, Kimberly A. Richards, "Should Furniture Become Fashion Forward?  Applying Fashion's Copyright Proposals to the Furniture Industry," 11 WAKE FOREST J. OF BUS. & INT. PROP. LAW 269, 269 (2010-2011) ("Copycat furniture companies, which produce custom furniture 'knockoffs' based on the designs of other furniture companies, are seeing growing success in the United States").

corporation was established made Leonard Frankel the President of Collezione and its ultimate decision-maker. (JA123 ¶ 3).

Defendant was Collezione's officer in charge of the overall financial operations of the company. (JA152). His duties at Collezione included tracking the company's finances and reporting to Leonard Frankel on financial issues. (JA150). Defendant had no involvement in Collezione's product designs, sales, or marketing. (JA127 ¶ 14). He did not participate in Collezione's day-to-day decisions regarding the purchasing and shipping of furniture. He was not familiar with the aesthetic appearance of the company's product lines. (JA124 ¶ 5).

It was Defendant's practice to attend the High Point Market twice a year. As the person responsible for managing Collezione's financial matters, Defendant dealt primarily with credit issues at the High Point Market—such as meeting with factoring companies who provided Collezione with credit insurance, with potential customers who needed credit, with Collezione's sales representatives relating to credit issues, and with existing customers who were having issues with credit. (JA124 ¶ 6; JA603). Defendant typically did not examine the furniture that Collezione displayed at the High Point Market and was not knowledgeable of the items that Collezione showed there. (JA603-04).

-10-

Plaintiff is a Delaware corporation,100% owned by Samson Holding, Ltd., a Chinese holding company. (JA12 ¶ 3; JA134).  It is in the business of designing and selling furniture manufactured by its sister company. (*Id*.).

### B.    Events Surrounding the October 2004 High Point Market.

According to Leonard Frankel, a representative of the now-defunct Rhodes Furniture advised him that Rhodes was embroiled in a dispute with Plaintiff, and asked him to supply Rhodes with lines of furniture similar to Plaintiff's Grand Inheritance Collection ("GIC") and English Manor Collection ("EMC"). (JA453-54).  Leonard Frankel was aware that one of Collezione's manufacturers had already made knockoffs of both of these collections for a competitor of Collezione's, and he agreed to Rhodes' request. (*Id.*).

Collezione referred to its knockoffs of GIC and EMC as "20000" and "20200," respectively. (JA453).  Collezione first displayed the 20000 and 20200 collections at the October 2004 High Point International Home Furnishings Market (the "High Point Market").  (JA470 lines 00093 19-24).  Leonard Frankel was responsible for marking the arrangements to have Market samples made and for coordinating Collezione's displays of furniture in Market showrooms. (JA585).  Although Leonard Frankel could not remember specifically at deposition whether he reviewed the models before putting them on display at the High Point Market, he testified that it was his normal practice to do so. (JA463).

Before and during the October 2004 High Point Market, Defendant did not know that Collezione had created the 20000 and 20200 collections to compete with Plaintiff's EMC and GIC collections. (JA572). Likewise, he had no knowledge of the source of the displayed 20000 and 20200 collections at the October 2004 High Point Market. (JA583).

At the end of the October 2004 High Point Market, Plaintiff sent Collezione a letter dated October 20, 2004 (the "Cease and Desist Letter"), addressed to Leonard Frankel, alleging, *inter alia*, that Collezione's 20000 and 20200 collections violated its copyrights relating to the GIC and EMC collections. (JA485). Defendant learned in late October 2004 that Plaintiff's counsel had sent the Cease and Desist letter to Collezione. Before reviewing this letter, Defendant had never heard of Plaintiff's EMC or GIC collections (JA582), and was unaware of the existence of Collezione's 20000 and 20200 collections, which was one of at least 10 collections being exhibited by Collezione at the High Point Market. (JA585, 603). After reading the letter, Defendant advised Leonard Frankel that in his opinion, Collezione should redesign the 20000 and 20200 to avoid litigation. (JA603).

Although Leonard Frankel believed that Universal's GIC and EMC lines were not entitled to copyright protection, to avoid litigation he agreed to redesign the 20000 and 20200 collections to distinguish them from the GIC and EMC lines.

-12-

(JA490). Leonard Frankel advised Collezione's sales representatives shortly after receiving the letter that the designs of the 20000 and 20200 would be changed. (JA476-77).

Defendant took responsibility for retrieving all of the photographs of the 20000 and 20200 collections from Collezione's sales representatives. (JA165, 168). Defendant also changed the internal bookkeeping status of customer orders for the 20000 and 20200 collections to "hold" so that there would be no confusion as to whether the customer had a pending order until the customer made a decision about whether it wanted to purchase the redesigned furniture. (JA174).

No representative of Collezione other than Leonard Frankel was involved in the redesign process. (JA513). According to Leonard Frankel's testimony, he asked a designer to "change every single decorative element on both collections." (JA477). He then approved the redesign at the factory (JA482) after concluding that the redesigned furniture did not violate Plaintiff's intellectual property rights. (JA515-16).

Leonard Frankel started "reselling" the orders; that is, contacting the people who had expressed interest in the original 20000 and 20200 collections and showing them sketches of the new versions. (JA511). He did not ask for Plaintiff's approval of the redesigned furniture because he did not believe Collezione's

furniture infringed on Plaintiff's EMC and GIC collections and did not care what

Plaintiff's position might be. (JA521).

### C.    Defense of the Collezione Litigation.

Leonard Frankel, not Defendant, directed all substantive aspects of the

Collezione Litigation.  Defendant averred by affidavit as follows:

> 9.    [Defendant] did not control the defense of Collezione
> during the Collezione Litigation.  All aspects of the defense were
> decided by [Defendant's] brother, Leonard Frankel.
> 10.    Leonard Frankel selected and replaced counsel on behalf
> of the corporation.
> 11.    Leonard Frankel decided what issues to advance in
> Collezione's defense.
> 12.    [Defendant's] involvement in the Collezione Litigation
> was limited to providing testimony.  In that regard, Leonard Frankel
> determined that [Defendant], rather than he, should serve as
> Collezione's primary witness.

(JA114).

### SUMMARY OF ARGUMENT

The court below ruled that Defendant Paul Frankel (hereinafter

"Defendant") was precluded, under principles of offensive collateral estoppel, from

relitigating various determinations made by the district court in Plaintiff's prior

litigation against Collezione.  First, as the district court acknowledged, nothing

prevented Plaintiff from joining Defendant as a party-defendant in the previous

litigation; this fact, in and of itself, should preclude the use of offensive collateral

estoppel.  The sworn and undisputed evidence presented to the court below,

moreover, was that Defendant had no control over the legal defense of Collezione in the prior litigation; rather, all aspects of the defense were controlled by his brother, Defendant Leonard Frankel.  Further, given the impending bankruptcy of the corporation, Defendant did not have the same incentives to defend the action fully and vigorously as he would have in an action putting him in peril of a ruinous individual judgment.  Application of offensive collateral estoppel under these circumstances was in error.

The trial court also determined, as a matter of law, that Defendant personally participated in the alleged infringement, in the face of sworn evidence that Defendant was not at all involved in the actions at issue.  However blameworthy the actions of the corporation (as found by the district court in the Collezione Litigation) may have been, the summary judgment evidence (indeed, the undisputed evidence), was that those actions were directed and controlled by Leonard Frankel, and Leonard Frankel alone.  Defendant was not aware of, and by virtue of his responsibilities with the corporation had no reason to be aware of, the alleged infringement before it happened or while it was occurring.  And once he learned about the company's alleged misconduct, he took appropriate action to correct it to the extent he had the authority to do so.

If the evidence proffered by Defendant below is ultimately found by the trier of fact to be true, he would not be liable to Plaintiff on any of the causes of action.

-15-

At a minimum, therefore, issues of material fact exist as to whether Defendant is liable on the Plaintiff's claims. The fact that Defendant and Leonard Frankel are brothers and were officers of the same corporation in no way justifies the result below, which is at odds with well-established jurisprudence relating to the propriety of summary judgment.

## ARGUMENT

### I.     STANDARD OF REVIEW.

The standard of review for an order granting summary judgment is *de novo*. *E.g.*, *Webster v. U.S. Dep't of Agriculture*, 685 F.3d 411, 421 (4th Cir. 2012). Summary judgment is proper "'only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party,' there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law." *Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)).

### II.    THE TRIAL COURT ERRED IN APPLYING OFFENSIVE COLLATERAL ESTOPPEL AGAINST DEFENDANT.

The district court "f[ound] that no genuine issue of material fact exists as to the application of collateral estoppel regarding Collezione's underlying liability to Plaintiff and further finds that such application is appropriate as a matter of law." 835 F. Supp.2d at 43. Given this ruling, the court "incorporated . . . by reference"

Judge Osteen, Sr.'s, findings of fact and conclusions of law from the Collezione

Litigation relating to liability. *Id.* The court erred, as shown below.

> **A.** **Plaintiff's Failure to Join Defendant as a Party in the Collezione Litigation When It Could Have Easily Done So Prevents Application of Offensive Collateral Estoppel.**

Plaintiff chose to file two separate lawsuits alleging identical causes of

action, based on the same underlying transactions and occurrences, against two

different sets of defendants. Such piecemeal litigation, obviously, wastes the

resources of the courts and litigants. Nevertheless, if the trial court's ruling is

upheld, Plaintiff will have been rewarded for its failure to join Defendant as party

in the Collezione Litigation. *But see Polk v. Montgomery County, Md.*, 782 F.2d

1196, 1202 (4th Cir. 1986) (reversing trial court's ruling applying offensive

collateral estoppel, *inter alia*, because the doctrine's application under the

circumstances of the case "could burden the defendants with multiple suits and

may be contrary to the notion of promoting judicial efficiency").

Plaintiff presented no evidence below attempting to justify its two-pronged

approach. Indeed, the district court acknowledged that it saw "no reason why

Plaintiff could not have easily joined Defendant as an individual party to the

Collezione Litigation." *Frankel*, 835 F. Supp. 2d at 42. The court's analysis of the

applicability of offensive collateral estoppel, Defendant submits, should have

ended there. *Accord Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 n.13

(1979) ("[A]pplication of collateral estoppel may be denied if the party asserting it 'could have effected joinder in the first action between himself and his present adversary'" (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 88 (3) (Tent. Draft No. 2, Apr. 15, 1975))); *Kloth v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 355 F.3d 322, 326-327 (4th Cir. 2004) ("[T]he doctrine of offensive collateral estoppel . . . may be used cautiously . . . so long as the plaintiff using the fact could not have easily joined the prior litigation").

## B.  Material Issues of Fact Abound as to the Factors Applicable to the Application of Offensive Collateral Estoppel.

Even had Plaintiff presented persuasive evidence of some hindrance to joinder of Defendant in the Collezione Litigation, application of offensive collateral estoppel would nevertheless be inappropriate.  Especially in light of the "greater possibility for unfairness from the use of offensive collateral estoppel" as compared to defensive collateral estoppel, "caution . . . is required in [its] application."  *Kloth v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 355 F.3d 322, 326-27 (4th Cir. 2004).  In particular, "the criteria for foreclosing a defendant from relitigating an issue or fact [must] be applied strictly."  *Id.* at 327.

This Court has instructed that in deciding whether to apply offensive collateral estoppel, the court "must weigh the following factors":

> (1) The party against whom the estoppel is asserted must have been a party or in privity with the party in the prior action.
> (2) There must have been a final determination of the merits of the

issues to be collaterally estopped.
(3) The issues decided in the prior action must have been necessary, material, and essential to the prior case.
(4) The party against whom the estoppel is to be applied must have had a full and fair opportunity to litigate the issues.
(5) The issues in the prior litigation must be identical to the issues sought to be estopped.

*Polk*, *supra*, 782 F.2d at 1201.  At least two of these factors militate against the application of the doctrine here.

First, there is at a minimum a question of fact as to whether Defendant and Collezione were in "privity" in the Collezione Action.  In *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643 (4th Cir. 2005), the Court explained:

There are three generally recognized categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action.

407 F.3d at 651 (citations omitted).  Given the Defendant's evidence (which is undisputed) that he did not control the Collezione Litigation (JA114), there is, at least, a material issue of fact as to the first category.  And the second category, relating to successors-in-interest, is plainly inapplicable.

The third category, adequate representation, is also known as "virtual representation." 407 F.3d at 651.  The *Martin* Court cautioned that "[i]n this Circuit, virtual representation has been defined narrowly." *Id*.  In particular, "'a

party acting as a virtual representative for a nonparty must do so with at least the tacit approval of the court.'" *Id*. (quoting *Klugh v. United States*, 818 F.2d 294, 300 (4th Cir. 1987)).  Given that no "tacit approval" of virtual representation appeared in the record in the *Martin* appeal, the Court determined that the district court erred in granting summary judgment on *res judicata* grounds. *Id*. at 652-53.

Here, likewise, there is nothing in the record suggesting that the district court in the Collezione Litigation gave tacit approval for Collezione to represent Defendant's interests there.  Such approval was not within the realm of possibility because at the time of the trial of that action, Plaintiff had given no indication to the court, the parties, or their representatives that it intended to file a new action against the defendants herein based on the same occurrences.  Hence, under the "much more stringent standard" applicable to virtual representation in this Circuit, *Martin*, *supra*, 407 F.3d at 652, privity is not present.

Summary judgment on the offensive collateral estoppel issue was also inappropriate because there are material issues of fact as to whether Defendant had a full and fair opportunity to litigate in the Collezione Litigation.  For example, Collezione, in default on its credit lines and facing the prospect of liquidation, did not retain an expert witness to rebut Plaintiff's expert's opinion on the substantial similarity of the furniture's decorative elements, and no Collezione representative of the corporation even appeared at the hearing on damages.  In contrast, had

Defendant known he was facing the prospect of a ruinous personal judgment, it is reasonable to assume that he would have vigorously defended the action, *inter alia*, by retaining an expert regarding substantial similarity. *See Kloth*, *supra*, 355 F.3d at 326 (in deciding whether to apply collateral estoppel, court should consider "whether the defendant had an incentive in the prior action to have defended the action fully and vigorously").

In sum, the district court erred in ruling, as a matter of law, that offensive collateral estoppel is appropriate under the circumstances. Given the fact that Plaintiff could have easily joined Defendant as a party in the Collezione Litigation but failed to do so, it should be precluded as a matter of law from invoking the doctrine. Alternatively, given the material issues of fact relating to the factors a court must consider before applying the doctrine, the matter should be remanded for an evidentiary hearing on those issues.

## III.   THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON ISSUES PERSONAL TO DEFENDANT.

Even if the application of offensive collateral estoppel were warranted, and the findings and conclusions of the Collezione Litigation were appropriately adopted against Defendant in this action, the court erred in granting summary judgment against Defendant on the Plaintiff's claims, as shown below.

A.    **Summary Judgment Against Defendant was Inappropriate
      on the Claim for Violation of the Copyright Act.**

As the court below noted, Section 501 of the Copyright Act provides that
"[a]nyone who violates any of the exclusive rights of the copyright owner as
provided by section[] 106 . . . is an infringer of the copyright." 17 U.S.C. § 501(a).
One of the copyright owner's "exclusive rights" under § 106 is "to distribute
copies . . . of the copyrighted work to the public by sale or other transfer of
ownership." 17 U.S.C. § 106(3). *Frankel*, 835 F. Supp.2d at 49.

The court concluded, as a matter of law, that Defendant violated the
Copyright Act by himself "distributing copies" of Plaintiff's copyrighted work to
the public or, alternatively, by possessing the right and ability to supervise such
unlawful distribution. *Id.* at 49. In addition, the court "f[ound] that Defendant
participated in the full extent of Collezione's distribution of the 20000 and 20200
collections and thereby helped give rise to all of the gross revenues and profits
Collezione realized from those collections. *Id.* The court erred.

The district court began its analysis of whether Defendant distributed
copyrighted furniture to the public by questioning Defendant's credibility. The
court stated that Defendant gave "contradictory statements" when he

> stated, by affidavit in this case and deposition in the Collezione
> Litigation, that he did not "participate in the decision to change the
> design after receipt of Universal's demand letter". . . . At trial in the
> Collezione Litigation, however, Defendant testified that he was "a co-

-22-

owner of the business" . . . and that he and his brother "discussed
should we do a redesign . . . and I expressed the opinion that we
should attempt to resolve this without litigation, by making a redesign
of the furniture."

835 F. Supp.2d at 45.

Initially, Defendant submits that these statements are not contradictory, and,
in fact, that his "express[ing] the opinion" that the furniture should be redesigned
to Leonard Frankel—the President of Collezione and sole decision-maker as to
such issues—was not equivalent to "participat[ing] in the decision to change the
design."   The district court, however, viewed Defendant's statement to Leonard
Frankel that a redesign should take place as not merely an expression of opinion,
but an instruction from an "equal co-owner." 835 F. Supp. 2d at 46.  The court
acknowledged that Defendant had testified (as did Leonard Frankel) that
Defendant owned less than 50% of the shares of Collezione.  However, the court
determined:

> This is an instance in which his affidavit "should be disregarded as a
> sham issue of fact." *Rohrbough v. Wyeth Labs., Inc*., 916 F.2d 970,
> 975 (4th Cir. 1990). This court finds that Defendant and his brother,
> Leonard Frankel, owned equal interests in Collezione by virtue of
> their stock and that those interests constituted a majority ownership,
> approximately ninety-eight percent.

It must be emphasized, however, that both Defendant and Leonard Frankel testified
to Bernard Frankel's stock ownership before they had reason to suspect that
Plaintiff would file this action against them individually.  In any event, such

-23-

credibility determinations are inappropriate in the context of summary

judgment[4]—here, especially, where Defendant has not appeared before Judge

Osteen, Jr., in any court proceeding.[5]

More fundamentally, it is far from clear why even an *express command* from

Defendant to Leonard Frankel to redesign the copyrighted furniture, after receipt of

the Cease and Desist Letter, could render Defendant liable for copyright

infringement.  Defendant is aware of no basis to hold a person liable for copyright

infringement merely for instructing that an infringing item be redesigned.

The district court also questioned Defendant's veracity on the ground that:

> Defendant has also stated, by affidavit in this case, that he did not do
> anything with respect to the marketing or sale of furniture. . . .
> However,  in relation to the furniture displayed at the October 2004
> High Point Market, Defendant testified at trial in the Collezione
> Litigation that he was "in the showroom when our photographer took
> pictures of the goods, and []received pictures back from the
> photographer, and I'm involved in the distribution of photography to

---

[4] *See, e.g.*, *Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 197 (4th
Cir. 2005) ("In opposing a summary judgment motion, the nonmoving party is
entitled to have the 'credibility of his evidence as forecast assumed, his version of
all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to
him'" (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.
1979)).

[5] Indeed, in the damages phase of the Collezione Litigation, Judge Osteen, Jr.,
acknowledged that because he did not preside over the trial, he was in no position
to make credibility determinations, and proceeded to rule on liability issues only
because he believed no credibility determinations would need to be made. *See
Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, *supra*, 599 F.
Supp. 2d at 651 (citing *Henry A. Knott Co., Div. of Knott Industries, Inc. v.
Chesapeake & Potomac Tel. Co.*, 772 F.2d 78, 87 (4th Cir. 1985)).

the salesmen." . . . Defendant further described how he collected the photographs from his salesmen and placed any related orders received on hold after receipt of Universal's letter in October 2004. . . . Defendant testified that after the decision was made to redesign the furniture, the orders that had been received were placed on hold until a redesign of the set was completed. . . . The customers were then contacted and told that they would be given the opportunity to decide if they wanted to place an order after the furniture was redesigned. . . . Defendant personally called at least one of these customers.

835 F. Supp. 2d at 45-46. However, Defendant's (1) retrieving marketing photographs from salesmen after Collezione received the Cease and Desist Letter, and (2) calling a customer to advise that the Collezione lines were being redesigned and that the customer could decide after the redesign was completed whether it wanted to purchase the furniture, plainly, is not equivalent to the distribution by Defendant of Plaintiff's copyrighted goods to the public. *See CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) ("While the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights, it nonetheless requires conduct by a person who causes *in some meaningful way* an infringement" (emphasis added)).

The court ruled, alternatively, that Defendant should be vicariously liable for Collezione's violations of the Copyright Act. 835 F. Supp. 2d at 49. "In order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing

-25-

activity; and (2) possessed an obvious and direct financial interest in the exploited

copyrighted materials." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d

505, 513 (4th Cir. 2002). The court below reasoned that:

> There can be no credible dispute that Defendant, as one of
> Collezione's two corporate officers, who by his own testimony is
> responsible for "order fulfillment," "flow of product," "[i]nvoicing,"
> and handling customers' "order inquiries," had "the right and ability
> to supervise" the infringing distribution of Collezione's 20000 and
> 20200 collections. . . . This court therefore finds, based on
> unchallenged evidence, that Defendant is vicariously liable for
> Collezione's copyright infringement.

835 F. Supp. 2d at 50. There is, however, no evidence in the record that Defendant

had a right or ability to supervise the distribution of the infringing furniture to the

public. Indeed, all of the summary judgment evidence is to the contrary. *Cf.*

*Brunswick Beacon, Inc. v. Schock-Hopchas Pub. Co*., 810 F.2d 410, 414 (4th Cir.

1987) (affirming district court decision which absolved the publisher of a

newspaper from personal liability for copyright infringement; "She had the largest

financial investment in the Free Press and the nominal title of publisher, but she

had no real authority and her few duties were menial"); *O'Connor v. United States*,

956 F.2d 48, 51 (4th Cir. 1992) ("While O'Connor did have the title of vice

president, he alleges that he did not perform duties an officer might perform nor

did he exercise any authority that his status as equity holder and vice president may

have bestowed upon him. Taking O'Connor's assertions as true and drawing

inferences in his favor, Voight was the party who ran the business and O'Connor

was little more than a passive investor who neither exercised authority nor had a duty to exercise authority"; summary judgment against O'Connor, therefore, was improper).

Defendant's sworn evidence is that while he was involved in Collezione's day-to-day activities, his duties did not include supervision over the design, selection, sale, or distribution of Collezione's 20000 and 20200 collections. Summary judgment on the Copyright Act claim, therefore, should not have been granted against Defendant on the Copyright Act claim.

**B.**    **Material Issues of Fact, Precluding Summary Judgment, Exist As to the Plaintiff's Claim Under the Lanham Act and UDTPA.**

The Lanham Act prohibits a "false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association . . . or as to the origin" of "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). The type of false designation of origin claim by Plaintiff here is a "reverse passing off," which occurs when a "producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). As this Court explained in the Collezione Litigation:

> A reverse passing off claim requires the plaintiff to prove four elements: (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer

-27-

confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin.

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*., *supra*, 618 F.3d at 438 (citation, quotations omitted).

Here, after the district court applied offensive collateral against Defendant with respect to the determinations in the Collezione Litigation, it concluded that one issue remained with respect to Defendant's individual liability: whether Defendant himself falsely designated the origin of the furniture in light of Collezione's alleged display at the October 2004 High Point Market of pieces of Plaintiff's furniture within its 20200 collection. *Frankel*, 835 F. Supp.2d at 45. The court ruled, in the face of directly contradictory evidence submitted by Defendant, that:

> Defendant knew, or at a minimum, had reason to know, in or around October 2004 that Collezione passed off Plaintiff's EMC furniture as Collezione's own products at the October 2004 High Point Market and in related advertising materials. Uncontested evidence likewise establishes that Defendant nonetheless continued to participate in the distribution of Collezione products that he knew and had reason to know were marketed with the aid of that false designation of origin.

*Id*. at 48-49. Of course, merely learning of an allegation from a competitor after the fact is not equivalent to Defendant himself falsely designating Plaintiff's furniture. (*See* JA 24 ¶ 7; JA125 ¶ 8; 603-04). And, as noted in the previous section, material fact issues abound as to whether Defendant himself distributed infringing products. *See*, *e.g.*, *Tillman v. Wheaton-Haven Recreation Ass'n*, 517

F.2d 1141, 1145 (4th Cir. 1975) ("But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation" (citation omitted)); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) (corporate official is personally liable in trademark infringement and unfair trade practices cases if officer personally committed the tortious conduct).

The district court offered an alternative finding as to Defendant's liability with respect to the Lanham Act claim:

> Alternatively, this court finds that Defendant's knowledge of and knowing participation in the Lanham Act violation is established through Defendant's willful blindness. . . . As described above, Defendant was on actual notice of the infringing activity not long after October 20, 2004, and continued supervising and participating in receiving and filling orders from October 2004 through January 2005. Defendant's continued activity after confrontation by Universal over the trademark infringement is further evidence of his intent and his knowing participation in corporate activity at the October 2004 High Point Market.

*Frankel*, 835 F. Supp. 2d at 48 n.7. Aside from the fact that Defendant's evidence denies his participation in the distribution of the furniture at issue, it is manifest that a determination of "willful blindness" under these circumstances would be for

-29-

the finder of fact. *Cf. Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, *supra*, 403 F.3d at 197 ("[A]n award of summary judgment is seldom appropriate in disputes in which particular states of mind are decisive as elements of the claim or defense" (citation, quotations omitted)).

Finally, the trial court concluded that Defendant violated the UDTPA, as a matter of law, for the same reasons that it found Defendant personally liable under the Lanham Act. *Frankel*, 835 F. Supp.2d at 50. Plaintiff submits that summary judgment was inappropriate on this issue for the reasons described herein. *See also Elmet Techs., Inc. v. Radko*, 2008 U.S. Dist. LEXIS 117273 at *9-10 (W.D.N.C. May 13, 2008) ("North Carolina courts limit a director's liability to a creditor for . . . unfair and deceptive trade practices to situations in which the director actually participates in the transaction on which the claims are based" (citing *Oberlin Capital v. Slavin*, 147 N.C. App. 52, 554 S.E.2d 840 (2001))).

## CONCLUSION

For all of the reasons stated, the district court's December 29, 2011 Order granting summary judgment against Defendant must be reversed, and this action remanded for further proceedings in the district court.

## REQUEST FOR ARGUMENT

Defendant/Appellant hereby requests oral argument pursuant to Local Rule 34(a).  In light of the complexities of the intellectual property claims at issue, the

voluminous record, and the convoluted procedural history of this matter,

Defendant believes that oral argument is appropriate and would aid the Court.

Respectfully submitted, this the 2nd day of October, 2012.

**/s/ John F. Bloss**
North Carolina State Bar No. 23947
HIGGINS BENJAMIN, PLLC
101 West Friendly Avenue, Suite 500
Greensboro, NC  27401
Telephone:  (336) 273-1600
Facsimile:  (336) 274-4650
E-mail: jbloss@greensborolaw.com
*Attorney for Defendant Paul Frankel*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,121*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: October 2, 2012          /s/ John F. Bloss
                                             *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 2nd day of October, 2012, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> W. Swain Wood
> WOOD JACKSON, PLLC
> 1330 Saint Mary's Street, Suite 460
> Raleigh, North Carolina  27603
> (919) 829-7394
>
> *Counsel for Appellee*

I further certify that on this 2nd day of October, 2012, I caused the required

copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk

of the Court.

/s/ John F. Bloss
*Counsel for Appellant*
